UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FIRST DATA MERCHANT SERVICES LLC,

                            Plaintiff,                  19-cv-10964 (PKC)

       -against-

                                                   OPINION
                                                   AND ORDER

MM DEVELOPMENT COMPANY d/b/a
PLANET 13; SISTEM COMMERCE CITY LLC
d/b/a SILVER STEM FINE CANNABIS; KTZ
HOLDINGS, INC. d/b/a SILVER STEM; GTR
SOURCE, LLC; NEW YORK CITY MARSHAL
STEPHEN W. BIEGEL; ML FACTORS
FUNDING LIMITED LIABILITY COMPANY;
PELICAN COMMUNICATIONS, INC. d/b/a
THE PELICAN GROUP; LINX CARD, INC.;
and GIVV, INC.,

                            Defendants.
-----------------------------------------------------------------x

CASTEL, U.S.D.J.:

        Plaintiff First Data Merchant Services LLC ("First Data") brought this interpleader action against nine defendants, each of whom, First Data represents, has a claim to the disputed funds in First Data's possession (the "Disputed Funds"). The Disputed Funds total $619,560.55. (Compl. (Doc 1).) Four creditors of defendant-claimant Linx Card, Inc. ("Linx")—Strand View Enterprises, LLC; Sunrise Pharmacy LLC; Blue Wave Management LLC; and Inland Medical Consultants, LLC d/b/a Advanced Therapeutics (collectively, the "Intervenor-Defendants")—move to intervene in this action pursuant to Rule 24, Fed. R. Civ. P. (Doc 66.) They seek to intervene as of right pursuant to Rule 24(a), Fed. R. Civ. P., or

alternatively, by permission pursuant to Rule 24(b), Fed. R. Civ. P. Intervenor-Defendants' motion to intervene as of right will be granted.

DISCUSSION

First Data processed payment card transactions for defendant-claimant GiVV, a subsidiary of Linx. (Doc 1 ¶ 15.) First Data terminated GiVV's account in February 2019, and held a reserve of $22,235, pursuant to its agreement with GiVV, for the purpose of settling chargebacks or reversals against GiVV's merchant account. (Id.) First Data also processed payment card transactions for defendant-claimant Pelican, but terminated Pelican's account in May 2019. (Id. ¶ 16.) In connection with Pelican's account, First Data held a reserve of $597,325.55, pursuant to its agreement with Pelican, to settle remaining chargebacks or reversals against Pelican's account. (Id.) These reserve funds together make up the Disputed Funds. (Id. ¶ 17.)

Beginning in or about June 2019, First Data began receiving demands with respect to the Disputed Funds. First Data received a Levy and Demand from Marshal Biegel on behalf of defendant-claimant GTR Source notifying First Data of GTR Source's New York Supreme Court judgment against Linx and GiVV in the amount of $5,190,734.98, exclusive of interest. (Id. ¶ 18.) The notice demanded that First Data satisfy the judgment with the Disputed Funds. (Id.) In September 2019, First Data received a subpoena notifying it of defendant-claimant ML Factors Funding's claim to the Disputed Funds, and seeking restraint of the same. (Id. ¶ 19.) Also in September 2019, First Data received a demand letter addressed to Linx from defendant-claimant Silver Stem, demanding payment of $114,962, exclusive of interest. (Id. ¶ 20.) In October 2019, defendant-claimant MM Development filed a lawsuit in California state court against Linx and GiVV, and also named First Data as a defendant in that suit for the

purpose of recovering the Disputed Funds. (Id. ¶ 21.) First Data represents that it cannot determine which defendant-claimants are rightfully entitled to the Disputed Funds. (Id. ¶ 22.)

First Data filed this interpleader action on November 26, 2019. (Doc 1.) The complaint also sought injunctive relief. The Court granted First Data's motion for a preliminary injunction on March 24, 2020. (Doc 76.) Intervenor-Defendants filed their motion to intervene on February 18, 2020, attaching their proposed answer and cross-claim. (Doc 66-1.) Intervenor-Defendants allege that Linx issued each of them promissory notes reflecting Intervenor-Defendants' corresponding loans to Linx. (Cross-Claim ¶¶ 14-17.) Each note became due and payable six months after the date of issue, but Linx never paid any amount due on the notes and remains in default. (Id. ¶¶ 18-19, 22.) Intervenor-Defendants allege that the Disputed Funds at issue in this litigation constitute assets of Linx and collateral under the promissory notes, and therefore, that they are entitled to the Disputed Funds in partial satisfaction of the amounts owed to them under the notes. (Id. ¶ 23.) Intervenor-Defendants' motion is unopposed.

Rule 24(a), Fed. R. Civ. P. has been simplified "in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems." United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) (citations omitted). A party may intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure if: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006). Failure to satisfy any of these four factors "is a sufficient ground to

deny the application." "R" Best Produce, Inc. v. Shulman–Rabin Mktg. Corp., 467 F.3d 238, 241 (2d Cir. 2006) (internal quotation marks and citation omitted). Applying this Rule "requires that its components be read not discretely, but together." Hooker Chems. & Plastics, 749 F.2d at 983.

Intervenor-Defendants satisfy each factor required to intervene as of right. First, their motion is timely. Timeliness is "determined within the sound discretion of the trial court from all the circumstances." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). Although "[t]imeliness defies precise definition," courts consider: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Id. This action was commenced on November 26, 2019, and Intervenor-Defendants moved to intervene less than three months later, on February 18, 2020. This litigation remains in its early stages; neither the existing parties nor the progress of this case would be prejudiced by their intervention. Intervenor-Defendants represent that they only learned of Linx's inability to repay the loan amounts when they discovered news articles about this litigation, and that they had believed Linx had other sources of funds. (Doc 66 at 5.) Intervenor-Defendants' ability to recover any amount due on the loans is already in doubt, and therefore, they may be prejudiced if their present motion were denied.

Second, Intervenor-Defendants assert an interest relating to the Disputed Funds. To satisfy this element, a party seeking to intervene as of right must have a "direct, substantial, and legally protectable" interest in the property or transaction at issue. Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) (internal quotation marks and citation omitted).

Intervenor-Defendants represent that they hold Linx promissory notes in the aggregate principal sum of $1.7 million, that Linx is in default on its repayment obligations, and that the Disputed Funds constitute assets of Linx to which Intervenor-Defendants have a senior claim pursuant to the collateral provision of the promissory notes. (Doc 66 at 4.)

Third, without intervention, Intervenor-Defendants' ability to recoup their loans to Linx may be further frustrated. Intervenor-Defendants acknowledge that the Disputed Funds are only a fraction of what is owed to them under the promissory notes, but that Linx's limited assets apart from the Disputed Funds makes recovery outside of this litigation even more unlikely. The Court concludes that denying Intervenor-Defendants' motion may "as a practical matter impair or impede their ability to protect their interests." New York Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y., 516 F.2d 350, 352 (2d Cir. 1975) (per curiam).

Finally, none of the existing parties represents Intervenor-Defendants' interests. Satisfying this element requires only a "minimal" showing. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972). As Intervenor-Defendants point out, the nature of interpleader actions such as this one involve competing claims for the same limited assets. The defendant-claimants named by First Data are all, like the Intervenor-Defendants, seeking to obtain the Disputed Funds for themselves. Intervenor-Defendants may therefore intervene to litigate their own claims to these Funds.

CONCLUSION

For these reasons, Intervenor-Defendants' motion to intervene as of right is GRANTED. The Clerk is directed to terminate the motion (Doc 66).

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
      May 6, 2020